**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JENNIFER CARDELLI, individually and on behalf of all others similarly situated, | Case No: _____ |
| Plaintiff, | |
| v. | **CLASS ACTION** |
| TOYOTA MOTOR SALES, U.S.A., INC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Jennifer Cardelli ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to her and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Toyota Motor Sales, U.S.A., Inc. ("Defendant" or "Toyota").

**NATURE OF THE ACTION**

1.      The Fourth Generation of gas-powered Toyota RAV4s, comprised of model years 2013–2018 ("Class Vehicles" or "Vehicles"), are equipped with a dangerous, defective, and inadequate battery hold down system that leads to excessive corrosion and electrical shorts between the battery's terminals and the battery hold down system (the "Defect").

2.      The Defect causes Class Vehicles to suddenly lose electrical power, stall, shutdown, and/or burst into flames, rendering Class Vehicles entirely unsafe to drive or own.

3.      Toyota failed to adequately warn Plaintiff and Class members of this risk or of the existence of the Defect, or of the nature of the harms it causes.

4.      Plaintiff and Class members are or were at risk of severe injury or death as a result of the Defect. Class Vehicles may suddenly and completely lose electronical power, shut down, or

stall while driving on highways or busy roads, creating a collision risk, and Class Vehicles' engine compartments have also burst into flames, risking the lives and property of Plaintiff, Class members, and the public at large.

5.      At all relevant times, Toyota knew or should have known that Class Vehicles contained the Defect. However, Toyota failed to disclose this material fact to Plaintiff or Class members, despite the danger the Defect presents.

6.      A properly designed battery hold down will securely hold both the original battery installed when the vehicle was manufactured and aftermarket replacement batteries of similar dimensions. Toyota knows that purchasers and lessees of Toyota vehicles regularly replace the manufacturer's batteries with similar aftermarket batteries. Toyota did not design an adequate battery hold down and did not provide a warning that Class Vehicles should only be used with batteries of a specific size.

7.      Toyota has failed to provide owners and lessees of Class Vehicles with a proper remedy, instead allowing Class Vehicles to stay on the road with the Defect in place.

8.      Class Vehicles purchased or leased by Plaintiff and Class members did not perform as advertised or promised. As a result of Toyota's unfair, deceptive, and fraudulent conduct, Plaintiff and Class members received a car worth less than was represented and worth less than what they paid for when purchasing their Vehicles.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2) because there are 100 or more Class members, at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and the matter in controversy exceeds $5,000,000, exclusive of interests and costs.

2

10.     This Court has personal jurisdiction over Defendant because at all pertinent times Defendant was engaged in the marketing, advertisement, sale, and leasing of Class Vehicles within this District and Plaintiff purchased her Class Vehicle within this District.

11.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

## PARTIES

### *Plaintiff*

12.     Plaintiff Jennifer Cardelli is a citizen of the state of Illinois, and resides in DuPage County, Illinois.

13.     Early in 2016, Plaintiff became interested in purchasing a new car. She conducted extensive research into different car manufacturers and models, including Toyota and, specifically, Class Vehicles. During this research, Plaintiff viewed advertising, marketing, brochures, and other representations created and distributed by Toyota describing Toyota's and Class Vehicles' quality, reliability, safety, and performance.

14.     On or about April 1, 2016, Plaintiff purchased a used 2013 Toyota RAV4 Limited from a used car dealership in Illinois for approximately $18,000.

15.     Plaintiff relied on Toyota's advertising regarding Class Vehicle's safety, reliability, and quality when deciding to purchase her Vehicle.

16.     Plaintiff used her Vehicle for commuting, personal use, and short trips to neighboring states. She never drove the Vehicle off-road or in rough conditions.; the Vehicle was never involved in an accident and was serviced regularly.

17.　On the morning of November 30, 2022, Plaintiff Cardelli drove her Vehicle to work, a short three-mile commute on side streets. During the drive her Vehicle appeared to be in normal working condition, as no warning lights appeared on the dashboard.

18.　Upon arriving at work, Plaintiff parked her Vehicle and left it running while she remained in the Vehicle to finish a phone call. After sitting in the still-running Vehicle for approximately two minutes, Plaintiff began to notice an acrid, burning smell.

19.　At that moment, Plaintiff Cardelli spotted smoke wafting up from under the Vehicle's hood. Looking down, she saw smoke beginning to filter through the Vehicle's air vents and into the cabin of the Vehicle. Plaintiff immediately turned off and quickly exited the Vehicle. Upon exiting the Vehicle, Plaintiff saw flames shooting out of the Vehicle's engine compartment and flaring out from under the Vehicle's hood.

20.　Plaintiff immediately dialed 911, urgently seeking help to stop the blaze before it spread. Approximately five minutes after her call, firefighters arrived on the scene. However, they were too late; the entire front of Plaintiff's Vehicle was already engulfed by flames. While firefighters were eventually able to contain the blaze, they were unable to do so before Plaintiff's Vehicle was destroyed.

21.　After escaping the burning Vehicle, Plaintiff took several pictures of the fire and its aftermath:











22.    The fire started in or near the Vehicle's battery as a result of the Defect. Plaintiff's

Vehicle sustained extensive fire damage and was deemed a total loss.

9

23.     Plaintiff had numerous personal effects and personal property in the Vehicle that were also destroyed by the fire, including two pairs of Ray Ban sunglasses, a North Face jacket, a pair of winter boots, and other articles of clothing and car accessories.

24.     Toyota failed to disclose the existence of the Defect to Plaintiff. The existence of the Defect was a material fact to Plaintiff; had she known of the existence of the Defect, she would not have purchased a Class Vehicle, or would have paid far less for it. Plaintiff could not reasonably know, and did not know, that her Vehicle was defective until it caught fire. Prior to the fire, Plaintiff's Vehicle, including its battery, appeared to be working as intended and Toyota never provided her any notice of the Defect, including Toyota's Consumer Advisory discussed below.

*Defendant*

25.     Defendant Toyota Motor Sales, U.S.A., Inc. is a California corporation with its principal place of business in Plano, Texas. Defendant Toyota Motor Sales is a wholly owned subsidiary of Toyota Motor North America, Inc. and controls Toyota's North American sales, marketing, distribution, and other operations in 49 states, including Illinois. Defendant and its agents, subsidiaries, and dealers, are or were responsible for the sale and distribution of Class Vehicles, including the Vehicle purchased by Plaintiff.

## FACTUAL BACKGROUND

**Toyota Markets and Sells Class Vehicles**

26.     The Toyota RAV4 was first released in the United States in 1996.[1] The Fourth Generation of RAV4s, which comprises the Class Vehicles, began with the 2013 model year and

---

[1] Kelly Lin, *Toyota RAV4 History: The Compact Crossover Goes From Wacky Concept to Best Seller*, MOTORTREND (Aug. 17, 2020), https://www.motortrend.com/features/toyota-rav4-history (last accessed Feb. 2, 2023).

ran through the 2018 model year.[2]

27.     Toyota has branded itself as providing safe and reliable vehicles. It asserts that "[s]afety is our top priority."[3] It further claims it has a "[c]ommitment to quality" and seeks to "[c]ontinuously raise our standards for reliability and customer satisfaction."[4] Toyota also supposedly seeks to "deliver products and services that meet and exceed the needs and expectations of our customers."[5]

28.     In its model year 2013 RAV4 brochure, Toyota guarantees that "[e]very Toyota Car, Truck and SUV is built to exceptional standards. And that's not idle boasting."[6] Toyota's advertising for the RAV4 promises Class Vehicles "have everything you need — style, SUV capability, and safety — to venture out to more places."[7] Toyota also claims it "has always placed great importance on safety."[8]

29.     Toyota consistently marketed Class Vehicles as having "the capability to get you just about anywhere"[9] and "ready to take you wherever you want to go."[10] The brochure for the 2016 model year RAV4 goes so far as to promise "[y]ou can rely on every Toyota to get you

---

[2] *See Toyota RAV4: From World First to World's Best*, TOYOTA EUR. NEWSROOM (Apr. 10, 2020), https://newsroom.toyota.eu/toyota-rav4-from-world-first-to-worlds-best/ (last accessed Feb. 2, 2023).

[3] *Toyota Global Vision*, TOYOTA, https://global.toyota/en/company/vision-and-philosophy/global-vision/ (last accessed Feb. 2, 2023).

[4] *Id.*

[5] *Id.*

[6] Toyota, *RAV4 2013* p. 13 (2013), https://archive.org/details/toyota-rav4-car-brochure-2013/mode/2up; *see also* Toyota, *RAV4 2018* p. 13 (2018), https://www.auto-brochures.com/makes/Toyota/RAV4/Toyota_US%20RAV4_2018.pdf.

[7] Toyota, *2017 RAV4* p. 2 (2017), https://www.auto-brochures.com/makes/Toyota/RAV4/Toyota_US%20RAV4_2017.pdf.

[8] Toyota, *RAV4 2016* p. 9 (2016), https://autocatalogarchive.com/wp-content/uploads/2019/05/Toyota-Rav4-2016-CA-.pdf.

[9] *E.g.*, Toyota, *RAV4 2015* p. 5 (2015), https://www.auto-brochures.com/makes/Toyota/RAV4/Toyota_US%20RAV4_2015.pdf.

[10] *RAV4 2013*, *supra* note 6, at 2.

wherever you need to go today. And with our commitment to safety, reliability, and value, we'll be on the road with you for many years to come."[11]

30.    It is not surprising that Toyota pushed this message of reliability and safety as a means to increase sales of Class Vehicles. "[R]esearch reveals that three quarters of US consumers find reliability (79%) and safety in an accident (75%) to be 'very important' automobile features."[12] Indeed, many consumers report that reliability is a "top purchase reason" when looking to buy a new car.[13]

31.    Toyota's representations that Class Vehicles are, *inter alia*, reliable, safe, and high quality were made with the intent of inducing consumers, including Plaintiff and Class members, to purchase Class Vehicles. Indeed, Plaintiff and Class members reasonably relied on these representations when deciding to purchase or lease Class Vehicles. However, Toyota failed to disclose, concealed, omitted, and misrepresented the material fact that the Class Vehicles contain a dangerous defect.

**Class Vehicles Contain a Defect**

32.    The Defect present in Class Vehicles causes electrical shorts between the terminals of the batteries in Class Vehicles and the battery hold down system.[14] The battery hold down

---

[11] *RAV4 2016*, *supra* note 8, at 13.
[12] *US consumers Cite Car Reliability, Safety as More Important Than Fuel Economy*, GROWTH FROM KNOWLEDGE (Feb. 23, 2017), https://www.gfk.com/press/us-consumers-cite-car-reliability-safety-as-more-important-than-fuel-economy.
[13] *Three of Four Car Buyers Avoid Considering SUVs Despite Record Retail Sales*, J.D. POWER (Jan. 12, 2017), https://www.jdpower.com/business/press-releases/jd-power-2017-auto-avoider-study.
[14] *See ODI Resume*, NHTS (Feb. 25, 2021), https://static.nhtsa.gov/odi/inv/2021/INOA-PE21005-5918.PDF (last accessed Feb. 2, 2023).

system "keeps your battery from moving as your car goes up and down hills, around corners and through quick starts and panic stops."[15]

33.    The battery hold down in the Class Vehicles consists of a tray on which the battery sits and a metal strap anchored over the top of the battery. Below are two representative images of the battery hold down system in Class Vehicles:[16]



---

[15] Mike Haggerty, *Have You Checked Your Battery Hold-Down Lately?*, NAPA (Jan. 24, 2020), https://knowhow.napaonline.com/have-you-checked-your-battery-hold-down-lately/#:~:text=Maybe%20you%20have%20a%20different,quick%20starts%20and%20panic%20stops.

[16] https://www.rav4world.com/threads/recall-for-battery-size-fitment-issue.318133/post-2923536; https://www.rav4world.com/threads/recall-for-battery-size-fitment-issue.318133/post-2941598.



34.     In Class Vehicles, the battery hold down system does not adequately secure the Vehicle's battery, allowing the battery to move and creating electrical shorts. These electrical shorts are extremely dangerous and manifest by causing Class Vehicles to stall, lose electrical power, shutdown, or burst into flames. Owners and lessees of Class Vehicles have consistently and repeatedly reported these and numerous other serious consequences of the Defect to the National Highway Traffic Safety Administration ("NHTSA"), Toyota dealerships, and to Toyota directly.

14

35.     Complaints about the Defect are so concerning and have occurred at such a significant rate that NHTSA opened an investigation into 2013–2018 RAV4s on February 25, 2021.[17] NHTSA's investigation described the Defect as "[t]he 12V battery B+ terminal shorts to the battery hold down frame which may result in the sudden loss of electrical power, vehicle stalling, and/or a fire originating in the engine compartment."[18] According to NHTSA, nearly 1.9 million vehicles are affected by the Defect.[19]

36.     NHTSA's investigation was specifically prompted by eleven reports to NHTSA, as well as additional data from Toyota, of fires in RAV4s starting in the engine compartment near the area of the battery.[20] According to NHTSA, "the overall number of vehicle fire allegations [in Class Vehicles] with the battery as the area of origin is larger than its peer population."[21]

37.     Numerous additional NHTSA complaints[22] describe the threat the Defect poses to consumers:

- **2013 RAV4**

  o   The battery caught on fire while driving causing a loss of power. I could pull over and a driver passing by jumped out and extinguished the fire. (NHTSA ID 11495582, Dec. 1, 2022)

  o   The battery on my 2013 Toyota Rav4 burst into flames while the engine was going and I was at a traffic stop/intersection. The electrical system failed, car died in place, luckily while at a stop and smoke from the engine compartment filled the car. I had just pulled off the highway and had come to an intersection in a residential neighborhood of a densely populated city center. Residents came from the street to help put the engine compartment fire out. Driver and passenger (a dog) were able to get out safely, police and fire department came to the scene and asked people to move away from the vehicle in case of explosion. Fire was extinguished. Car was towed to local Toyota dealership, Car insurance agent has done preliminary

---

[17] *See* ODI Resume, *supra* note 14.
[18] *Id.*
[19] *See id.*
[20] *See id.*
[21] *Id.*
[22] All NHTSA complaints are reproduced exactly as they appear on NHTSA's website, www.nhtsa.gov, including spelling, punctuation, grammar, and capitalization.

inspection as well as dealership service manager. Both state that the battery did catch on fire. Battery installed was correct size as per service technician's initial report. At this time, total damage to the car is unclear, as a full inspection of the vehicle and electrical system has not been done. two or three times sporadically over the two days prior, the lights on the dashboard flickered on momentarily as though there was some kind of electrical short circuit happening somewhere. At present the vehicle remains at the dealership awaiting full Toyota inspection, since as a result of this office's investigation of numerous battery fires, Toyota has issued a Consumer safety recall.[23] (NHTSA ID 11451539, Jan. 28, 2022)

o   WHILE DRIVING THE VEHICLE ON A CITY STREET, ALL THE LIGHTS ON THE DASHBOARD FLASHED ON, THEN OFF. VEHICLE IMMEDIATELY LOST ALL ENGINE AND ELECTRICAL POWER. I WAS ABLE TO DRIVE THE VEHICLE OFF THE ROAD AND ON TO A PARKING LOT. THINKING THAT A BATTERY CABLE POSSIBLY HAD COME LOOSE, I RAISED THE HOOD. THE AREA AT OR NEAR THE BATTERY WAS ON FIRE. I CALLED 9-1-1, BUT BY THE TIME THE FIRE DEPARTMENT ARRIVED, THE ENTIRE FRONT PART OF THE VEHICLE WAS IN FLAMES. THE 2013 TOYOTA RAV4 WAS COMPLETELY DESTROYED. I WAS NOT INJURED, BUT I AM CONCERNED THAT OTHER RAV4 DRIVERS MAY NOT BE AS FORTUNATE. (NHTSA ID 11271217, Sept. 25, 2019)

o   TL* THE CONTACT OWNED A 2013 TOYOTA RAV-4. THE CONTACT STATED THAT VEHICLE WAS PARKED IN A PARKING SPACE WHEN SHE SHIFTED THE GEAR SHIFTER INTO REVERSE AND THE VEHICLE STALLED. THE VEHICLE RESTARTED ITSELF. THE CONTACT DROVE THE VEHICLE AROUND THE CORNER AND THE VEHICLE STALLED ONCE MORE. THE CONTACT LOOKED UP AND SAW GRAY SMOKE COMING FROM UNDER THE HOOD AND ALL OF THE WARNING LIGHTS ILLUMINATED. THE CONTACT EXITED THE VEHICLE WHEN SHE SAW GRAY SMOKE BILLOWING AND WITHIN SECONDS OF EXITING THE VEHICLE, IT WAS ENGULFED IN FLAMES. THE POLICE AND FIRE RESCUE WERE ON THE SCENE AND A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A LOT AND THE INSURANCE COMPANY DEEMED IT TOTALED, BUT COULDN'T DIAGNOSE WHAT THE FAILURE WAS SINCE THE VEHICLE'S EXTERIOR FRAMES WERE ONLY LEFT. THE CONTACT INFORMED CHARLES MAUND TOYOTA (8400 RESEARCH BLVD, AUSTIN, TX 78758) OF THE FAILURE. THE MANUFACTURER WAS INFORMED OF THE FAILURE AND OPENED A CLAIM, HOWEVER THEY

---

[23] While this NHTSA complaint states that Toyota has issued a recall related to battery fires, Toyota has not issued any recalls on Class Vehicles related to battery fires or the battery hold down system according to information available on NHTSA's website. *See, e.g.*, *2013 Toyota RAV4 SUV FWD*, NHTSA, https://www.nhtsa.gov/vehicle/2013/TOYOTA/RAV4/SUV/FWD#recalls (last accessed Feb. 2, 2023) (select "RECALLS" under "Recalls & Safety Issues" heading).

LATER INFORMED THE CONTACT THAT THE CLAIM WAS DENIED SINCE THERE WAS NO INDICATION THAT A DEFECT CAUSED THE FIRE. THE MANUFACTURER INFORMED THE CONTACT THAT UPON INSPECTION, THE J HOOK WAS MISSING AND THE POSITIVE BATTERY CABLE WAS WELDED TO THE BATTERY HOLD DOWN BRACKET AS THE FAILURE. THE CONTACT STATED THAT SHE SAW A NEWS ARTICLE THAT NHTSA WAS PROBING ENGINE COMPARTMENT FIRE FOR 2013-2018 TOYOTA RAV4, AND BELIEVED THE FAILURE WAS RELATED. THE FAILURE MILEAGE WAS 39,187. *BF*LN[.] (NHTSA ID 11403048, Aug. 16, 2018)

o THE ENGINE STARTED ON FIRE UNDER NORMAL DRIVING CONDITIONS. THE CAR WAS NOT INVOLVED IN ANY ACCIDENT. THE RAV4 LIMITED WAS TOTALED. IT WAS LESS THAN 3 YEARS OLD AND HAD 17,500 MILES ON IT. THE CAR WAS SERVICED REGULARLY BY TOYOTA. THE LAST SERVICE WAS ABOUT 4 MONTHS PRIOR TO THE FIRE. TOYOTA HAS NOT HONORED THEIR 3YR/36,000 MILE WARRANTY COVERAGE ON THE CAR. TOYOTA HAS NOT OFFERED A REPLACEMENT CAR, RENTAL OR ANYTHING. EVERY TIME WE CALL OUR TOYOTA CASE MANAGER OR LEGAL DEPARTMENT MANAGERS, WE HAVE TO LEAVE A MESSAGE AND THEY NEVER RETURN OUR CALLS. (NHTSA ID 10860544, Mar. 10, 2016)

o TL* THE CONTACT OWNS A 2013 TOYOTA RAV4. THE CONTACT STATED THAT THE VEHICLE STALLED SEVERAL TIMES WITHOUT WARNING. THE VEHICLE WAS RESTARTED, BUT THE FAILURE RECURRED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 4,800. UPDATED 6/8/2015 *JS[.] (NHTSA ID 10663626, Dec. 11, 2014)

o WHILE I WAS DRIVING, THE CAR'S ELECTRIC SYSTEM STARTED REBOOTING ITSELF A FEW TIMES, AND THE CAR EVENTUALLY STALLED ON A BUSY STREET! THE POWER WAS COMPLETELY SHUTDOWN AND I COULDN'T EVEN TURN THE FLASH LIGHT ON. I HAD TO HAVE POLICE OFFICER COME TO THE LOCATION WHERE THE CAR STOPPED TO PROTECT OTHER DRIVERS (UNTIL A TOWING TRACK ARRIVED). THIS INCIDENT APPENDED ON 4/24/12 ON EASTBOUND CARMEL VALLEY ROAD RIGHT BEFORE THE INTERSECTION WITH EL CAMINO REAL. I HAD A SIMILAR ISSUE WITH THE ELECTRIC SYSTEM TWO MONTHS PRIOR, AND HAD A TOYOTA DEALER LOOK AT THE ISSUE. HOWEVER, THEY COULDN'T IDENTIFY THE ROOT CAUSE AND SIMPLY UPDATED THE SYSTEM SOFTWARE. AS OF TODAY, 4/25/14, THE CAR IS STILL AT A TOYOTA DEALER AND BEING REPAIRED. *TR[.] (NHTSA ID 10584988, Apr. 24, 2014)

- **2014 RAV4**

  - Our 2014 Rav4 LE with 37k miles caught on fire while parked in a shopping plaza parking lot. The fire department says I was lucky that I wasn't driving the car or I wasn't in the car with children, pets, or elderly parents or we could have died. If my car was parked next to others this fire could have spread and been absolutely catastrophic. We've had our car fully inspected once within the last 6 months, and a limited inspection during an oil change within the last 3 months. I believe the fire started with the battery, we think we were affected by this... https://www.consumerreports.org/car-safety/toyota-rav4-under-investigation-due-to-battery-fire-concerns-a8630737173/ Our battery was inspected recently during an oil change and it was fine. The car has very low miles. Prior to parking the car I noticed a sulfuric rotten egg smell which I thought was coming from one of the nearby restaurants in this plaza. I turned the engine off, rolled up the windows, and put the in-car ventilation on at which point I noticed the smell coming from the vents. I rolled the windows down and was going to pop the hood to investigate but I decided to wait a few minutes for the car to cool down. There were no check engine lights or attention lights on the dashboard. As I got out of the car to walk to the plaza I noticed a small amount of steam coming from between the cracks of the hood. About 45 seconds later when I walked to a nearby storefront I noticed a flame coming from between the windshield and hood. I promptly called 911 and the Skokie fire department arrived on the scene about 5 minutes later. They put out the car fire in about 3 - 4 minutes, but the car was a complete loss. (NHTSA ID 11459901, Mar. 20, 2022)

  - The contact owns a 2014 Toyota RAV4. The contact stated while driving 15 mph, the vehicle stalled without warning. After multiple attempts, the contact was able to restart the vehicle. Soon after the vehicle was restarted there was smoke coming from the vehicle and the vehicle stalled again. The contact stated that the battery had caught on fire. The battery was destroyed. The fire department was not notified of the fire. There was no injury sustained. Due to the failure, the contact had the vehicle towed to an independent mechanic for repair. Neither the dealer nor the manufacturer was notified of the failure. The vehicle was not repaired and remained in the possession of the mechanic. The failure mileage was approximately 135,000. The VIN was not available. (NHTSA ID 11425497, July 16, 2021)

  - Making a turn onto a local toll road and entire car went dead without warning of any kind. I had to struggle with loss of power steering to complete turn without going off road. Car came to a stop. I tried to call my wife to advise her I was having car problems which is surprising as I haven't had issues previously and had an earlier version of the RAV4 that I drove for 210,000 miles. Anyway, another vehicle stopped alongside and inquired if I needed assistance. As I talked, I noticed a smokey smell from what I had initially assumed was steam. I stepped outside the vehicle and observed through the drivers side front wheel well to see fire at the bottom of the engine compartment. Since I was driving to trails to ride my mountain

18

bike, I had a water bottle and squeezed it onto the flames which partially extinguished and then relit. I hit the hood release but decided it was better to leave the hood down. I went to the rear lift gate to open it to retrieve my expensive carbon fiber mountain bike but it was locked. I tried to open the back driver side door also without success and tried hitting the unlock button on the drivers door but there was no power. About this time the smoke coming from the hood increased and I decided to heed the advise being given to step away from the car. Had I remembered sooner, I probably could have reached around the driver's seat to recover my wallet from the back pocket of the seat. As the fire increased, I stepped increasingly further back from the vehicle. About 5 minutes into the fire a state trooper arrived and expended his only extinguisher in an unsuccessful attempt to put out the fire. It was probably another 12-15 minutes before the fire department arrived to extinguish the fire but by that time, the car and its contents were a total loss. (NHTSA ID 11419257, May 31, 2021)

o NEW RAV-4 WAS SLIGHTLY MORE THAN 1 MONTH OLD (7/1/14 TO 8/11/14). WE WERE DRIVING BACK TO ATLANTA FROM VACATION IN THE OUTER BANKS, WE WERE USING CRUISE CONTROL TO MAINTAIN SPEED ON THE EXPRESSWAY. WE CAME ACROSS A SLOWER MOVING TRUCK AND PULLED INTO THE PASSING LANE, STILL USING CRUISE CONTROL. WHILE PASSING SLOW TRUCK, ANOTHER TRUCK CAME UP ON OUR TAIL AT A HIGHER RATE OF SPEED. I STEPPED ON THE GAS TO GET IN FRONT OF THE SLOW TRUCK, INTENDING TO ENABLE THE FAST TRUCK TO PASS US ONCE WE WERE IN FRONT OF THE SLOW TRUCK AND BACK IN THE NORMAL LANE. INSTEAD OF SPEEDING UP, RAV-4 LOST POWER AND QUICKLY SLOWED DOWN, TO THE POINT OF NEEDING TO PULL BEHIND THE SLOW TRUCK THAT WE WERE TRYING TO PASS AND HAVING TO PULL TO THE SHOULDER OF THE ROAD. THE FAST TRUCK ON OUR TAIL STARTED TO (SLIGHTLY) FISHTAIL AND MIGHT HAVE CRASHED INTO US IF THE TRUCK DRIVER HAD LOST CONTROL OF HIS VEHICLE. WE PULLED TO THE SIDE OF THE ROAD AND TRIED TO REV THE ENGINE, BUT GOT NO RESPONSE, THE ENGINE ALMOST STALLING. SINCE THE ENGINE WAS NOT RESPONDING, WE SHUT THE CAR OFF, AND RESTARTED, AND WERE ABLE TO CONTINUE WITH NO FURTHER PROBLEMS, BUT DIDN'T USE THE CRUISE CONTROL AGAIN FOR THE REST OF THE RIDE HOME. WE REPORTED THE INCIDENT TO OUR DEALER, AND WERE TOLD THAT THIS WOULD BE VERY DIFFICULT TO TROUBLE-SHOOT, AND TO CONTINUE TO DRIVE AND BRING IT BACK IF IT HAPPENS AGAIN. WE NO LONGER TRUST THE CRUISE CONTROL ON THIS VEHICLE AND WILL NOT USE IT AGAIN. *TR[.] (NHTSA ID 10652907, Aug. 11, 2014)

- **2015 RAV4**

  o The electrical system failed and the car has been towed by State Farm Insurance to Cop-art Savage Vendor in Elgin Il today. My safety was at risk by fast rapidly engulfing flames coming from under the car hood. The problem has not been

reproduced or confirmed by a dealer or independent service center that we know of. Vehicle or components have been inspected by police, and might have been inspected by our Insurance after the vehicle was towed. There was a warning battery light just before smoke came out from under the hood, then the car stopped and then flames started to come out from under the hood engulfing the front part of the car. (NHTSA ID 11440975, Nov. 17, 2021)

o My wife was driving her 2015 Toyota Rav4 on September 13, 2021 when the car stalled while on the interstate. She coasted to the side. It started back up so she continued to work which was off the next exit. As soon as she entered the parking lot, the Rav4 stalled again and she was able to coast in to a parking lot. As soon as she walked inside the building the Rav4 caught on fire. There were no warning lights are any indication of anything wrong with the vehicle up until this point. According to the dealer and the insurance company, the battery caught on fire. What exactly caused this I do not know. The Insurance company deemed the vehicle a total loss per the Toyota Dealers recommendation. (NHTSA ID 11434953, Sept. 13, 2021)

o THE VEHICLE STALLED WHILE I WAS DRIVING ON A HIGHWAY AT APPROXIMATELY 55 MPH. I HAD BEEN DRIVING FOR 15 MINUTES. I LOST POWER AT THE DASHBOARD, LOST POWER STEERING, AND THE ENGINE STOPPED RUNNING. I COASTED TO A SIDE STREET AND STOPPED THE CAR. I OPENED THE HOOD, AND DISCOVERED A FIRE IN THE ENGINE COMPARTMENT. THE BATTERY CABLE CLOSEST TO THE ENGINE WAS ON FIRE, AND HAD MELTED ONE CORNER OF THE BATTERY. A PASSERBY HELPED EXTINGUISH THE FIRE, AND THE FIRE DEPARTMENT WAS CALLED TO INSPECT AND MAKE SURE THE FIRE WAS OUT. EARLIER THAT DAY, THE VEHICLE STALLED IN THE SAME WAY WHILE DRIVING APPROXIMATELY 5 MPH IN A PARKING LOT, BUT THE POWER CAME BACK IN A FEW SECONDS. IMMEDIATELY PRECEDING THAT WAS A 1-HOUR DRIVE AT INTERSTATE HIGHWAY SPEEDS WITH NO TROUBLES. (NHTSA ID 11403613, Mar. 17, 2021)

o SHORTLY AFTER DRIVING WITH NO ISSUES, THE PARKED CAR STARTED TO SMOKE FROM UNDERNEATH THE HOOD. WITHIN SECONDS, A LARGE FIRE HAD STARTED WHICH COMPLETELY CONSUMED THE CAR AND ALSO SPREAD TO MY WIFE'S CAR AND THE HOUSE'S CARPORT. INSURANCE INVESTIGATOR INFORMED US THAT THE FIRE LIKELY STARTED IN/NEAR THE ENGINE TOWARDS THE DRIVERS SIDE BASED ON WHERE THE HOTTEST PARTS OF THE FIRE APPEARED TO HAVE BEEN. HOWEVER, NO CONCLUSIVE DETERMINATION WAS MADE REGARDING THE CAUSE. THE CAR WAS IN GOOD CONDITION AND HAD NOT HAD ANY MAINTENANCE WORK PERFORMED ON IT RECENTLY. THERE WERE ALSO NO SIGNS OF INTRUSION BY RODENTS OR OTHER ANIMALS. THIS HAPPENED WITH NO WARNING. I'VE ALSO SINCE LEARNED THIS HAD HAPPENED ONLY ONE MONTH BEFORE TO THE PARENTS OF ONE OF OUR CHILDRENS'

FRIENDS. THEY ALSO HAD A RAV4, ALTHOUGH NOT THE SAME
MODEL YEAR (I BELIEVE IT WAS A 2013). I HAVE ALSO SEEN MANY
OTHER REPORTS WHILE RESEARCHING THIS ISSUE. IF THERE IS A
DEFECT OR DESIGN FLAW CONTRIBUTING TO THESE FIRES, IT
SHOULD BE ADDRESSED QUICKLY! (NHTSA ID 11315799, Feb. 8, 2020)

o   THE CAR WAS BEING DRIVEN IN PHILADELPHIA AT A LOW SPEED
WHEN THE ENGINE CAUGHT FIRE. THE FIRE QUICKLY WAS OUT OF
CONTROL AND DESTROYED MOST OF THE CAR, INCLUDING THE
ENGINE, DASHBOARD, FRONT SEATS, WINDSHIELD, WINDOWS,
FRONT TIRES WHICH EXPLODED, AND AIRBAGS. (NHTSA ID 10840172,
Mar. 6, 2016)

o   TL* THE CONTACT OWNS A 2015 TOYOTA RAV4. THE CONTACT
STATED THAT THE VEHICLE EXPERIENCED A LOSS OF POWER. THE
FAILURE WAS SPORADIC. THE CONTACT STATED THAT THE VEHICLE
WOULD SPORADICALLY RESTART INDEPENDENTLY. THE ANTI-LOCK
BRAKE SYSTEM, AIR BAG, TRACTION CONTROL, AND ALL WHEEL
DRIVE WARNING INDICATORS ILLUMINATED. THE MANUFACTURER
WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS TAKEN TO
THE DEALER WHERE THE FAILURE COULD NOT BE REPLICATED. THE
FAILURE OCCURRED APPROXIMATELY SIX TIMES. THE FAILURE
MILEAGE WAS APPROXIMATELY 9,000. UPDATED 08/31/16*LJ
CONSUMER STATED THE LIGHT O HE CRUISE CONTROL STALK
BLINKS OFF AND ON CRUISE CONTROL DROPS OUT UNEXPECTEDLY.
THE ENGINE SHUTS DOWN WHILE DRIVING DOWN THE HIGHWAY
AND YOU LOSE ALL ELECTRICAL POWER. IT WILL SOMETIMES NOT
RESTART FOR UP TO 15 MINUTES. THE ENGINES SHUTS DOWN FOR A
FEW SECONDS TO A MINUTE AND THEN RESTARTS ON ITS OWN. IT
LEAVES THE WARNING LIGHTS FOR THE ABS, AWD AND TRACTION
CONTROL ON AND THEY DON'T GO OFF UNTIL YOU CYCLE THE
IGNITION SWITCH. THE RADIO/ NAVIGATION SCREEN ALSO LOCKS UP
WHEN THIS HAPPENS. THE CAR HAS BEEN LOOKED AT A TOTAL OF
SEVEN TIMES FOR THIS PROBLEM. CAR HAS SPUN 9 TIMES BECAUSE
OF THIS PROBLEM. UPDATED 6/12/18*JB[.] (NHTSA ID 10874884, Nov. 2,
2015)

o   THE LIGHT ON THE CRUISE CONTROL STALK BLINKS AND IT IS VERY
DISTRACTING AT NIGHT WHILE DRIVING. THEN THE CRUISE
CONTROL STARTED DROPPING OUT WHILE DRIVING. NO WARNING
LIGHTS OR CODES WERE STORED IN THE COMPUTER WHEN CHECKED
BY THE DEALER. THE DEALER REPLACED THE CRUISE CONTROL
SWITCH, BUT THE PROBLEM GOT WORSE. THE ENGINE STARTED
SHUTTING OFF WHILE DRIVING ON THE HIGHWAY WITH A TOTAL
LOSS OF ELECTRICAL POWER AND WOULD TAKE SEVERAL MINUTES
BEFORE IT WOULD RESTART DUE TO NO ELECTRICAL POWER. THE
DEALER THEN ADJUSTED THE SWITCH ON THE BRAKE PEDAL BUT IT

DIDN'T HELP. THE RADIO/NAVIGATION SCREEN HAS SINCE LOCKED
UP AND YOU HAVE TO RESTART THE CAR TO RESET IT. THE ENGINE
WILL SOMETIMES SHUT OF FOR A FEW SECONDS AND THE RESTART
ON ITS OWN WHILE DRIVING. WHEN THIS HAPPENS SEVERAL
WARNING LIGHTS STAY ON (ABS, AIRBAGS, TRACTION CONTROL &
ALL WHEEL DRIVE). THE LIGHTS DO NOT RESET UNTIL THE CAR IS
TURNED OFF AND BACK ON BY THE KEY. I HAVE ALMOST BEEN
INVOLVED IN 3 ACCIDENTS BECAUSE OF THESE PROBLEMS. THE CAR
IS NOW IN THE SHOP AFTER CONTACTING THE MANUFACTURER
SEVERAL TIMES ABOUT THE FAILURE OF THE DEALER TO REPAIR THE
CAR AND THAT IT IS UNSAFE TO DRIVE. IT IS AT A DIFFERENT
DEALERSHIP DUE TO THE SELLING DEALERS INCOMPETENCE IN
THEIR SERVICE DEPARTMENT AND MANAGEMENT TO ADDRESS THE
PROBLEM. THESE PROBLEMS HAVE BEEN GOING ON FOR OVER 5
MONTHS AND OVER A PERIOD OF 15,000 MILES AND I DO NOT BELIEVE
IT CAN BE FIXED AND I DO NOT BELIEVE THE MANUFACTURER IS
REALLY TRYING TO REPAIR THE CAR BECAUSE OF ALL THE
STALLING THEY ARE CURRENTLY DOING AT THIS TIME. I NEED YOUR
HELP. (NHTSA ID 10862741, Oct. 15, 2015)

o TL* THE CONTACT OWNS A 2015 TOYOTA RAV4. THE CONTACT
STATED THAT THERE WAS AN ABNORMAL NOISE THAT PROGRESSED
RANDOMLY. VARIOUS WARNING INDICATOR LIGHTS FLASHED AND
THE VEHICLE WAS HESITANT TO START ON SEVERAL OCCASIONS.
UPON STARTING THE VEHICLE, IT STALLED SEVERAL TIMES AND
ALSO WOULD NOT START. THE VEHICLE WAS TAKEN TO THE DEALER
MORE THAN THREE TIMES AND THEY WERE NOT ABLE TO REPLICATE
AND DIAGNOSE THE FAILURE. THE MANUFACTURER WAS NOTIFIED
OF THE FAILURE MORE THAN ONCE AND WAS UNABLE TO PROVIDE
A PERMANENT REMEDY FOR THE CONDITION. THE VEHICLE WAS NOT
REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 5,700. (NHTSA
ID 10809623, Oct. 13, 2015)

- **2016 RAV4**

  o While my wife was driving the car it suddenly shutoff. She was in the middle of a
  turn and was able to get to the side of the road. I few moments later she saw what
  she assumed was steam coming from under the hood and she immediately got out
  of the car. Within a minute of getting out of the car she saw flames dripping down
  from the engine. She called the fire department who put the flames out, but the car
  is most likely totaled. The fire department told her it looked like the battery
  exploded. I want to make sure you are aware of this as I see you have had other
  complaints. (NHTSA ID 11482632, Sept. 1, 2022)

  o OUR 2016 RAV4 PRODUCED A LOUD CLUNK THEN LOST POWER
  (AFTER BEING DRIVE 5-10 MINUTES) AND CAME TO A COMPLETE
  STOP. THE ENGINE WOULD NOT TURN OVER NOR THE CAR POWER

COME BACK ON. WHITE SMOKE BEGAN WITHIN 30 SECONDS OF LOSING POWER AND WITHIN ONE MINUTE FLAMES BEGAN SHOOTING OUT UNDER THE DRIVER'S SIDE UPPER HOOD. (NHTSA ID 11415425, May 4, 2021)

o   TL* THE CONTACT OWNS A 2016 TOYOTA RAV4. THE CONTACT STATED THAT WHILE HER HUSBAND WAS STOPPED AT A TRAFFIC LIGHT, HE STARTED SMELLING AN ABNORMAL BURNING ODOR BEFORE FLAMES STARTED COMING UP FROM UNDER THE DASHBOARD AND OUT OF THE DRIVER'S AND PASSENGER'S SIDE VENTS. THE DRIVER PULLED OVER AND STARTED POURING WATER FROM A COOLER ONTO THE FIRE TO TRY TO EXTINGUISH THE FLAMES HOWEVER, THE FLAMES REIGNITED. ANOTHER MOTORIST PULLED OVER TO ASSIST AND DISCONNECTED THE BATTERY. A BUSINESS OWNER ALSO STOPPED BY, AND EXTINGUISHED THE FLAMES WITH A FIRE EXTINGUISHER. THE FIRE DEPARTMENT ARRIVED HOWEVER, THE FIRE WAS ALREADY EXTINGUISHED. A POLICE REPORT WAS FILED. THE DRIVER STATED THAT A FIRE REPORT WAS NOT FILED. THE CONTACT STATED THAT THE DASHBOARD WAS DESTROYED. THE DRIVER SUSTAINED BURNS ON BOTH HANDS HOWEVER, MEDICAL ATTENTION WAS NOT SOUGHT. THE DRIVER CONTACTED FIESTA KIA (7400 LOMAS BLVD NE, ALBUQUERQUE, NM 87110, (505)999-2700) WHERE THE VEHICLE HAD BEEN PURCHASED ONLY 22 DAYS EARLIER. THE DEALER ARRIVED AT THE SCENE AND THE VEHICLE WAS TOWED TO THE DEALER WHERE IT REMAINED STILL UNREPAIRED. THE INSURANCE PROVIDER WAS CONTACTED AND INFORMED THE DRIVER THAT A FIRE INVESTIGATOR WOULD BE SENT OUT TO INSPECT THE VEHICLE, WHICH WAS STILL PENDING. THE VEHICLE WAS NOT REPAIRED. THE INSURANCE PROVIDER HAD NOT YET DECIDED WHETHER OR NOT THE VEHICLE WAS A TOTAL LOSS. THE MANUFACTURER WAS NOT CONTACTED OR INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS 52,000. (NHTSA ID 11414617, Apr. 22, 2021)

- **2017 RAV4**

  o   The contact owned a 2017 Toyota Rav4. The contact stated while driving at 10 MPH, the vehicle stalled. There was no warning light illuminated. The contact veered to the side of the road. The contact was unable to restart the vehicle after several attempts. The contact saw smoke coming out from underneath the hood of the vehicle and immediately exited the vehicle. The contact then saw flames coming out from underneath the hood of the vehicle. The contact was able to extinguish the fire with the assistance of the fire department. There were no injuries sustained. A fire department report was filed. The vehicle was towed to a tow lot where it was totaled. The dealer and manufacturer were not notified of the failure. The failure mileage was approximately 76,000. (NHTSA ID 11464584, May 7, 2022)

o  I bought my Rav4 in September of 2017 brand new and within 6 months I had a
dead battery needing replacement so I replaced it via AAA. Since then, I have had
the battery replaced an additional 3 times! I always serviced my car at the dealer
and took very good care of it. Then after 50k miles, I started having odd lighting
issues…both headlight bulbs had to be replaced within 3 weeks of each other and
one high beam bulb, and then my tail lights went out! Then I would occasionally
have trouble starting the car and with a natural gas smell, rotten eggs. Which could
be a catalytic converter or fuel pump issue but can also be the battery. Well, my
Rav was in the driveway with a dead battery and with no tail lights and had been
sitting there for a month since I mainly drive our Sienna. My Rav just caught on
fire and was completely destroyed. No one was hurt but if the Sienna had been out
there it would've caught on fire and it burned the garage door…Rav totaled! I also
had a very expensive brake job last year and think those are faulty too. But this
fire….was bad and I can't get a car of equal value with what i received for the total
loss. What is Toyota doing about this? Less than 4 yr old well taken cared of Rav
4 XLE that I paid cash for and now can't even replace with a Corolla! There were
no warning lights ever, not even for the dead battery's. And less than 6 months prior
to the fire, it was serviced at my Toyota dealer and they said all was good. The
firemen that came also told me that Rav4 fires have increased and I searched on
Consumer Reports and sure enough…what was explained was a carbon copy of my
experiences. Thank god no one was in it when it started, but the house could've
caught fire as well. Toyota needs to do something for those of us who had their cars
totaled due to fire…just the time invested finding a replacement is worth
something….not to mention the time vested researching vehicles before I bought
the Rav4. plus the depreciation, etc…. (NHTSA ID 11420682, May 12, 2021)
(ellipses in original)

o  We purchased this Toyota RAV4 car new in 2017, for our daughter. It has driven
problem free, until the car was 3 years and 3 months old. At 3 years and 3 months
from purchase, in October, 2020, my daughter took it into the Toyota dealership, in
the morning, for a routine oil change. She hasn't had any problems with the car, and
has only had it serviced at the Toyota dealership. She drove it in, and got a ride
home, and was waiting for the call to come pick up her car. In the afternoon, the
dealership called to say her 2017 RAV4 have severe engine damage from the batter
exploding, while it had been sitting at the dealership. They told her it was 3 months
past the warranty, and Toyota wouldn't pay for any repairs. It sat at Toyota for a
week, until our auto insurance representative went and looked. He called us to say
that: "he had never seen soo much engine damage." He told us that our auto
insurance was – "totaling the car, that the engine was unrepairable, and that they
were going to take it to the auto dump." Our insurance company hauled it away,
and determined its remaining value and paid us, in October, 2020. My daughter
chose a new car, we purchased it for her, with the insurance money, covering part
of the purchase. It cost us thousands more, to cover the cost of the new replacement
car. I told my daughter that we had bought her a "dud of a gift", and would pay for
the new car. Our auto insurance confirmed what the dealership said, that the battery
had exploded. (NHTSA ID 11418253, Oct. 15, 2020)

24

- o TL* THE CONTACT OWNED A 2017 TOYOTA RAV4. THE CONTACT STATED THAT AFTER PARKING AND EXITING THE VEHICLE, SHE NOTICED SMOKE COMING FROM THE ENGINE THEN THE ENGINE CAUGHT FIRE. THE VEHICLE WAS TOWED AND THE INSURANCE COMPANY DEEMED IT TOTALED. THE CONTACT INFORMED THE DEALER JAY WOLFE TOYOTA OF WEST COUNTY ( 14700 MANCHESTER RD, BALLWIN, MO 63011) AND THE MANUFACTURER OF THE FAILURE. THE FAILURE MILEAGE WAS 50,000. (NHTSA ID 11400228, Aug. 21, 2020)

- o WHILE I WAS DRIVING HOME FROM WORK ON THURSDAY, MARCH 5, 2020, I SMELLED SMOKE. I LOOKED AT THE TEMPERATURE ON THE DASHBOARD AND IT SHOWED THAT THE TEMPERATURE WAS A LITTLE BELOW THE MIDDLE LINE INDICATING THE VEHICLE WAS NOT HOT. I CONTINUED DRIVING FOR A COUPLE MORE BLOCKS AND CONTINUED TO SMELL SMOKE SO ATTEMPTED TO PULL OVER INTO A PARKING LOT. WHEN I TRIED TO PULL OVER, THE VEHICLE STOPPED ON ITS OWN SO I WAS HALF WAY BETWEEN THE STREET AND PARKING LOT. I SAW SMOKE COME OUT FROM UNDER THE HOOD OF THE VEHICLE. ABOUT TWO MINUTES LATER, FLAMES STARTED COMING OUT FROM UNDER THE HOOD. THE VEHICLE CAUGHT FIRE. (NHTSA ID 11317639, Mar. 5, 2020)

- o TL* THE CONTACT OWNED A 2017 TOYOTA RAV4. THE CONTACT STATED THAT WHILE HER DAUGHTER WAS MAKING A TURN THE STEERING WHEEL CEASED AS WHITE SMOKE WAS SEEN COMING FROM UNDER THE HOOD. THE CONTACT STATED THAT THE VEHICLE CAME TO A STOP AS FLAMES WERE SEEN COMING FROM UNDER THE HOOD AND FROM UNDERNEATH THE VEHICLE. THE CONTACT'S DAUGHTER WAS ABLE TO EXIT THE VEHICLE WITH NO INJURIES. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUHISED THE FIRE. A FIRE DEPARTMENT REPORT WAS FILED. THE CONTACT STATED WAS AWAITING INSPECTION BY THE INSURANCE COMPANY. THE MANUFACTURER THE DEALERSHIP WAS MADE OF AWARE OF THE FAILURE. THE VEHICLE FAILURE WAS NOT DIAGNOSED BY A DEALER OR INDEPENDENT MECHANIC. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE, HOWEVER NO ASSISTANCE WAS OFFERED. THE APPROXIMATE FAILURE MILEAGE WAS 57,000. (NHTSA ID 11308368, Feb. 8, 2020)

- **2018 RAV4**
  - o I received a consumer advisory notice from Toyota. Notice number appears to be 21TG01 and is related to battery fires. Apparently the wrong size battery was installed and Toyota issued the notice to have the battery size checked. It should be a Group 35 battery. However, a Toyota Group 35 measures 6 7/8 inches wide across and after market batteries to the best of my research are 6 3/8 inches wide. The top battery hold down that fits over the top of the battery does not fit a 6 3/8 wide battery which appears to be the standard with the exception of Toyota. The top hold

down bracket is too big and does not fit properly over the top of the battery. If that makes sense. (NHTSA ID 11471078, June 17, 2022)

o   The contact owned a 2018 Toyota Rav4. The contact stated that while driving at 20-25 MPH and making a turn into a parking lot, the vehicle intermittently lost power steering and electrical power twice. The contact continued to drive and as she drove over a speed bump, the vehicle stalled and lost electrical power. There were no warning lights illuminated. The contact stated that she saw smoke coming out from underneath the hood of the vehicle. The contact quickly exited the vehicle and noticed that the vehicle was on fire. The contact did not sustain any injuries. The contact was able to extinguish the fire with the assistance of the fire department. A police report was filed. The vehicle was towed to a tow lot, where it was totaled. The Chevrolet dealer who sold the vehicle to the contact was notified of the failure. The manufacturer was not notified of the failure. The approximate failure mileage was 107,000. (NHTSA ID 11442924, Nov. 4, 2021)

o   We were driving when I made a right turn and suddenly the steering wheel locked on me and at the same time various warning lights lit up on my dashboard. The car slowed and I was able to regain control of the steering wheel to pull over. After driving a few miles further we once again came to a right turn and everything happened as before except with greater intensity. We tried to straighten the steering wheel for control and were able to pull over into an empty parking lot. By the time we came to a stop, which took all of just one or two minutes, smoke was coming out from under our hood. We quickly got out of our car and opened the hood to see the battery in flames. I called 911 while my husband poured his cup of water over the flames. It stalled the fire but it continued to spark until help arrived. I am certain if we had not had water the whole car would have caught on fire. The car was towed to a Toyota dealership where we were told that their was an issue with battery installation. At present it is being worked on but I have lost confidence in this vehicle especially since we got no warning that there was a problem and we could have been badly injured or killed if the circumstances had been different and we had not been able to pull over and get out or have water with us. We have since learned that this is an issue for many people who own this 2018 RAV4 vehicle. I also learned there is no recall on this issue. I hope that Toyota isn't waiting for someone to be seriously injured or die before they fix this problem. (NHTSA ID 11417783, May 5, 2021)

o   THE VEHICLE USE PURCHASED IN DEC '18. IN DEC '19 THE BATTERY WENT DEAD AND WAS REPLACED. TOYOTA SAID THE BATTERY HAD A BAD CELL.. IN APR '20 THE BATTERY WENT BAD AGAIN AND WAS REPLACED. TOYOTA SAID THE WRONG SIZE BATTERY WAS INSTALLED THE LAST TIME. IN AUG '20 THE BATTERY WENT BAD AGAIN AND WAS REPLACED, TOYOTA SAID IT WAS BECAUSE OF A GPS DEVISE THAT WAS INSTALLED BY THE SELLING DEALERSHIP AND WAS NEVER MADE AWARE TO THE BUYER. IN DEC '20 THE BATTERY WENT BAD AGAIN AND WAS REPLACED. THIS TIME TOYOTA SAID IT WAS BECAUSE THE CAR WAS NOT BEING DRIVEN

ENOUGH. THE DRIVING PATTERN HAS BEEN THE SAME WITH THIS VEHICLE SINCE IT WAS PURCHASED. IF THAT WAS THE PROBLEM THEN WHY WAS IT NOT A PROBLEM IN THE FIRST YEAR OF OWNERSHIP. ALSO IT WAS NOT A PROBLEM WITH THE PREVIOUS VEHICLE THAT WAS USED AS A TRADE-IN ON THIS VEHICLE. THERE SEEMS TO BE AN OBVIOUS PROBLEM WITH THE ELECTRICAL SYSTEM OF THE VEHICLE. (NHTSA ID 11406221, Nov. 30, 2020)

o   MY 2018 TOYOTA RAV4 HAS STALLED 5 TIMES WHILE DRIVING ON CITY STREETS IN MOVING TRAFFIC, FIRST TIME IN FEB 2019 WHILE DRIVING HOME FROM WORK, IN APRIL THREE TIMES WHILE DRIVING TO WORK AND ONE TIME WHILE DRIVING HOME FROM WORK(RUSH HOUR). ALL DOCUMENTED WITH TOYOTA. OCCURS WHEN I TAKE MY FOOT OFF THE GAS WHILE DRIVING, AND DIFFICULTY RESTARTING AFTER IT STALLS WITH LOSS OF POWER AND SPUTTERING. 'CHARGING SYSTEM MALFUNCTION' WARNING MSG APPEARED ON DASHBOARD(I TOOK PHOTO AND EMAILED TO TOYOTA). I FOLLOWED INSTRUCTIONS IN 2018 TOYOTAL RAV4 OWNER'S MANUAL "STOP THE CAR IMMEDIATELY...CONTINUING TO DRIVE THE VEHICLE MAY BE DANGEROUS". HAD CAR TOWED TO TOYOTA IMMEDIATELY. 3 TROUBLE CODES WERE RECORDED P1603(ENGINE STALL), P1604 STARTABILITY MALFUNCTION, AND P1605(ROUGH IDLING), HOWEVER THEY WERE UNABLE TO DETERMINE ROOT CAUSE OF STALLING AND REFUSED TO KEEP MY CAR TO DO FURTHER ANALYSIS DESPITE THE FACT THAT I TOLD THEM I DID NOT FEEL SAFE DRIVING VEHICLE, AND MY CAR IS STILL UNDER COMPREHENSIVE WARRANTY COVERAGE. I CONTACTED CORPORATE, AND THEY RESTATED DEALER CONCLUSIONS AND WOULD NOT ALLOW ME TO SPEAK TO A FIELD TECH SPECIALIST. I THEN EMAILED AND WROTE A LETTER TO VP SALES OF TOYOTA, ANDREW GILLELAND. REP FROM EXECUTIVE OFFICE CALLED ME. I ASKED FOR TOYOTA TO PROVIDE ME WITH EITHER TRANSPORTATION ASSISTANCE AND A NO COST-TO-ME EXTENDED COMPREHENSIVE WARRANTY UNTIL THE UNDERLYING CAUSE IS DETERMINED AND WITHOUT FURTHER STALLING INCIDENCES, OR A REPLACEMENT VEHICLE. HE REFUSED, DESPITE ALL THE SIGNIFICANT POTENTIALLY DANGEROUS SAFETY ISSUES IN A VEHICLE WITH LESS THAN 9,200 MILES. TOYOTA DOES NOT APPEAR TO BE CONCERNED WITH RELIABILITY, PEACE OF MIND, AND MOST OF ALL SAFETY. I HAVE A CASE # WITH TOYOTA. I RECENTLY DISCOVERED THERE ARE SEVERAL OTHER REPORTS ON THIS SITE WITH SAME STALLING ISSUES AS MY CAR. (NHTSA ID 11205343, Apr. 2, 2019)

o   AFTER PURCHASING OUR BRAND-NEW 2018 RAV4 FROM AUTHORIZED TOYOTA DEALER, WE WERE HEADING BACK HOME. ON OUR WAY, WE NOTICED BURNING SMELL FOLLOWED BY BLACK SMOKE FILLED

FRONT SIDE OF THE CABIN. I QUICKLY MOVED MY CAR TO THE RIGHT SIDE PARKING LOT. WHILE CHANGING THE LANE I COULD NOT EVEN SEE THE RIGHT MIRROR BECAUSE OF THE BLACK SMOKE IN THE CABIN. AS SOON AS I PARKED THE CAR AND WE GOT OFF THE CAR, WITHIN A FEW SECONDS FLAMES FROM THE HOODS WERE NOTICED I CALLED EMERGENCY SERVICE (911) AND TO OUR DISBELIEF TO WATCH OUR NEW CAR BURNING IN FRONT OF US. IT WAS ONLY 15 MINS DRIVE FROM DEALER WHEN WE THE INCIDENT HAPPENED. IT TOOK ONLY 10 MINS TO SEE MY CAR WAS DESTROYED BY FLAMES. I COULD NOT GET ANYTHING OUT FROM FRONT OR BACK SEATS[.] (NHTSA ID 11164698, Dec. 24, 2018)

38.      The Defect renders Class Vehicles unsafe, unreliable, and unfit for ordinary personal use. The Defect can cause the total destruction of the Vehicle and other property, and poses a serious threat to the health and safety of Plaintiff and Class members.

39.      Toyota has long known of the existence and danger of the Defect due to, *inter alia*, warranty claims, part orders, repair records, insurance claims, NHTSA complaints, internal communications, and direct contact with consumers regarding the Defect. Toyota monitors or reviews NHTSA complaints for information about the performance, reliability, and safety of the vehicles it produces. Toyota also monitors other online spaces, such as Toyota-specific forums and websites, for similar consumer complaints. Additionally, Toyota was notified of NHTSA's investigation into the Defect by a letter dated April 6, 2021.[24]

40.      Toyota concealed, failed to disclose, omitted, concealed, and misrepresented the existence of the Defect; the reliability, quality, and value of Class Vehicles; and Class Vehicles' fitness for the purposes for which Plaintiff and Class members purchased the Vehicles, such as commuting and personal use.

---

[24] Letter from Gregory E. Magno, Chief of NHTSA Vehicle Defects Division D, to Gary Ross, Vice President – Quality, Toyota Motor North America (Apr. 6, 2021), https://static.nhtsa.gov/odi/inv/2021/INIM-PE21005-83246P.pdf.

41.     The existence of the Defect is a material fact to Plaintiff and Class members. Had Plaintiff and Class members known of the existence of the Defect, they would not have purchased Class Vehicles, or would have paid substantially less for them.

**Toyota Failed to Warn Plaintiff of the Defect**

42.     Class Vehicles' owner's manuals[25] do not warn Vehicle owners or lessees of the existence of the Defect or the dangerous tendency of Class Vehicles to stall, shutdown, or burst into flames as a result of the Defect. The owner's manuals do not state that a particular sized battery is required, or that the battery hold down will not properly work with a similarly sized smaller battery. Plaintiff was not warned of the existence of the Defect or the dangers it poses, despite reviewing her Vehicle's owner's manual.

43.     The defective battery hold down system is located in Class Vehicles' engine compartment. Under normal operating conditions, the hood of a Class Vehicle would be down, concealing the Defect and the Vehicle's battery from view.

44.     In 1996, Toyota launched its Toyota Certified Used Vehicles ("TCUV") program based on its "timeless commitment to quality, innovation and durability."[26] A Toyota-certified used vehicle must pass a "Rigorous 160-Point Quality Assurance Inspection."[27] One portion of the inspection concerns the battery system and includes: "Battery in good condition, has proper cold

---

[25] *See, e.g.*, *Toyota 2013 RAV4 Owner's Manual*, TOYOTA, available at https://www.toyota.com/owners/resources/warranty-owners-manuals.rav4.2013 (click "View PDF") (last accessed Feb. 2, 2023).
[26] Toyota, *Toyota Certified Used Vehicles* p. 2 (2021), https://www.toyotacertified.com/content/dam/tcuv/sections/certifications/brochures/TCUV_Certified_Program_Brochure.pdf (last accessed Feb. 2, 2023).
[27] *Toyota Certified Program Overview*, TOYOTA, https://www.toyotacertified.com/certification (last accessed Feb. 2, 2023).

cranking amps and reserve capacity"; "Battery proper size and secure"; "Battery posts free of corrosion"; and "Cables in good condition."[28]

45.     Through TCUV inspections, Toyota knew or should have known that Class Vehicles' battery hold down systems are defective because they do not adequately secure the battery.[29] As the TCUV program began in 1996, Toyota clearly knew that loose batteries could result in serious damage to vehicles or their owners and lessees long before it sold Class Vehicles to Plaintiff and Class members. Furthermore, over 7 million vehicles have been sold through the TCUV program,[30] meaning Toyota surely inspected Class Vehicles containing the Defect numerous times.

46.     Toyota knew or should have known of the existence of the Defect long before Plaintiff purchased her Vehicle due to, *inter alia*, the many NHTSA complaints describing the Defect prior to April 2016,[31] Vehicle owners contacting Toyota directly about the Defect, and inspections of used Class Vehicles. As Toyota was aware of the Defect, Toyota knew that the Defect caused Class Vehicles to have a propensity to experience problems such as stalls, shutdowns, or fires.

---

[28] *Toyota Certified Vehicle Inspection & History*, TOYOTA, https://www.toyotacertified.com/inspection (select "View Inspection Checklist" and then choose dropdown menu "Battery System") (last accessed Feb. 2, 2023); *see also 160-Point Quality Assurance Inspection Check Sheet*, TOYOTA, https://www.nadaguides.com/cars/certified-pre-owned/pdf/Toyota-CPO-pt-inspection-checklist.pdf (last accessed Feb. 2, 2023) (inspection checklist including "Battery properly sized and secure").

[29] Defendant certainly is involved in the TCUV process in relation to safety concerns, as "[b]efore a Toyota Certified Used vehicle is listed or sold, Toyota Motor Sales, USA, Inc. requires dealers to complete all safety recalls." *160 Point Inspection: See Toyota's Used Car Inspection Checklist*, STEVENSON HENDRIK TOYOTA, https://www.stevensonhendricktoyota.com/cpo-160 (last accessed Feb. 2, 2023).

[30] *See Toyota Celebrates 7 Millionth Toyota Certified Used Vehicle Sale*, Toyota (Mar. 14, 2022).

[31] *See, e.g.*, *supra* NHTSA Complaints Nos. 10860544; 10663626; 10584988; 10652907; 10874884; 10862741; and 10809623.

47. Toyota did not disclose or warn Plaintiff and Class members of the existence of the Defect. As such, Plaintiff and Class members had no reasonable way of knowing of the dangers the Defect presents.

48. Class Vehicles were manufactured, distributed, sold, or leased without proper warnings and instructions regarding the existence of the Defect. Without those warning, Plaintiff and Class members had no reasonable way to know of the hidden risks posed by the Defect.

**Toyota's Inadequate Response**

49. In response to NHTSA's investigation, Toyota issued Consumer Advisory 21TG01 (the "Consumer Advisory") on November 18, 2021,[32] which describes the measures Toyota planned to take to address the Defect.

50. In the Consumer Advisory, Toyota blamed the vehicle fires on smaller sized batteries sold and installed by non-Toyota retailers. Toyota claimed to have "discovered that many non-Toyota retailers and others who sell or install replacement batteries were recommending a small size battery for replacement."[33] Toyota went on to explain that the "smaller battery may not fit securely with the RAV4's battery mounting parts, and, in some cases, can move around when the vehicle is driven, causing a short circuit."[34] "Using the wrong size battery, or not installing a replacement battery properly, can cause damage to the battery and the vehicle, and it could cause a vehicle fire."[35] In other words, although the smaller batteries are operational in the Class Vehicles, according to Toyota, they do not properly fit with the Vehicles' battery hold down system.

---

[32] *Consumer Advisory 21TG01*, TOYOTA (Nov. 18, 2021), https://static.nhtsa.gov/odi/tsbs/2022/MC-10209007-9999.pdf.
[33] *Id.* at 2.
[34] *Id.*
[35] *Id.*

51.     Toyota never notified or informed Plaintiff or Class members, in the Vehicles' owner's manuals or otherwise, that they should only use specific, larger sized batteries in their Class Vehicles and that the smaller sized batteries do not properly fit with the Vehicles' battery hold down system.

52.     Toyota offered Class members one free inspection at authorized Toyota dealerships to confirm if the battery installed in Class Vehicles was a specified larger size.[36] Toyota also offered to replace damage or missing components of the battery hold down system, but only if a battery of the recommended larger size was installed.[37]

53.     Toyota sent some Class members a label with "battery replacement information that will assist service providers who may replace the battery in the future" which was to be placed in the engine compartment.[38]

54.     However, Toyota refused to replace damaged or missing parts of Class Vehicles' battery hold down systems at no cost to Class members with ill-fitting batteries installed on their Vehicles,[39] even though those Class members are extremely at risk of experiencing the catastrophic effects of the Defect.

55.     Toyota also refused to replace the dangerous smaller batteries installed on Class Vehicles for free. Instead, Toyota offered a paltry $32 discount off of the "retail price on a Toyota True-2 battery of the correct size" at Toyota dealerships,[40] which retail for over $100.[41] Toyota did not offer a discount or reimbursement for other batteries of the correct size, including other Toyota

---

[36] *Id.* at 2.
[37] *See id.*
[38] *Id.*
[39] *See id.*
[40] *Id.*
[41] *See, e.g.*, True-2 Battery, TOYOTA PARTS CTR., https://parts.toyota.com/p/True-2-Battery/69277380/00544035T2525.html (last accessed Feb. 2, 2023) (retailing for $108.28).

batteries,[42] nor did it offer a discount or reimbursement for the cost of labor to install the batteries.[43] Even using Toyota's offered discount, the Class members most at risk would be forced to spend over $70 for the cost of a new battery, plus the cost of labor to install the battery and tax.

56.     Toyota offered nothing to Class members who wished to purchase a replacement battery of the recommended size through retailers other than Toyota dealerships,[44] thereby coercing Class members to pay Toyota to rectify Toyota's own failings.

57.     Toyota has not recalled Class Vehicles to address the Defect or to ensure that Class Vehicles are equipped with adequate warnings and instructions relating to proper battery use and installation. By not issuing a recall, Toyota has saved potentially billions of dollars, while continuing to put Class members' lives at risk.[45]

58.     While Toyota sent letters to some owners and lessees of Class Vehicles beginning in December of 2021, a large portion of the Class have not received warning or notice of the Defect, and are unaware of the Defect and the risks it poses. Without notice, a Class member with a Class Vehicle that has a smaller sized battery will not know the battery is dangerous until the Vehicle stalls, loses power, or worse, catches fire. The smaller batteries are otherwise operational in the Class Vehicles, and even now are commonly recommended by parts suppliers as appropriate for use in the Class Vehicles. Batteries are a car part that Toyota knows is more frequently

---

[42] Toyota offers a higher-quality battery, the TrueStart series, in addition to the True-2 series. TrueStart batteries have an extended battery life, faster recharge rate, improved terminals, and a longer warranty. *See, e.g.*, *TrueStart™ or True-2™, which is right for me?*, TOYOTA OF GREENSBORO, https://www.toyotaofgreensboro.com/service-center/batteries (last accessed Feb. 2, 2023).

[43] *See Consumer Advisory 21TG01*, *supra* note 32.

[44] *Id.*

[45] *See* Steven Ewing, *Automotive Recalls Cost $22 Billion in 2016*, CNET (Jan. 31, 2018), https://www.cnet.com/roadshow/news/automotive-recalls-cost-22-billion-in-2016/.

replaced, and oftentimes purchased from a parts supplier other than Toyota. However, Toyota does not notify Class members, in the Vehicles' owner's manual or otherwise, to only use the larger specified batteries. Without sufficient notice and a recall, Toyota has not sufficiently ensured that Class members know to only purchase and use the larger batteries, or the risks of using a smaller battery. Class members will continue to purchase the smaller batteries that are not fully compatible with Class Vehicles' battery hold down system.

59.     Toyota has failed to recall Class Vehicles, failed to ensure that all Class Vehicles are equipped with the correct size battery, and forced Class members most at risk to pay to have the Defect addressed. Toyota has not adequately addressed, remedied, or compensated Plaintiff and Class members for the Defect and injuries it caused.

**Plaintiff's and Class Members' Damages**

60.     Toyota knew or should have known that the Class Vehicles were advertised and sold with false and misleading representations regarding the safety, reliability, and quality of Class Vehicles, and actively concealed and omitted the existence of the Defect. Despite Toyota's representations and promises to the contrary, Class Vehicles are not reliable, safe, or long-lasting.

61.     Toyota also knew or should have known that Class Vehicles did not contain adequate warnings to Plaintiff or Class members about the Defect and the harms, including significant safety risks, it causes.

62.     Due to these failings, Class Vehicles are defective, unsafe, unreliable, and unsuited to safely transport Plaintiff and Class members. Despite its knowledge of these failings, Toyota has failed to adequately remedy the Defect.

63.     As a result of Toyota's actions and omissions, Plaintiff and Class Members have been deprived of the benefit of their bargain, incurred lost time and out-of-pocket costs to address

the Defect, and suffered a diminution in value of their Vehicles due to the Defect. Plaintiff and

certain Class members[46] suffered the total destruction of their Vehicles, as well as the personal

property contained therein.

## CLASS ALLEGATIONS

64.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23, on behalf of

a Nationwide Class defined as follows:

> All persons who purchased or leased a new or used Class Vehicle in the
> United States and its territories.

65.     Plaintiff also brings this action on behalf of the following subclass (the "Fire

Subclass"):

> All persons who owned or leased a Class Vehicle that sustained fire damage
> caused by the Defect.

66.     Together, the Nationwide and Fire Subclass shall be referred to as the "Class".

67.     Excluded from the Class are Defendant, Defendant's affiliates, subsidiaries, parent

company, authorized distributors and dealers, employees, officers, directors, and the Judge(s)

presiding over this action and the clerks of said Judge(s). Plaintiff reserves the right to amend the

definition of the class if discovery or further investigation reveal that the class should be expanded

or otherwise modified.

68.     Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

69.     The members of the Class are so numerous that joinder of the Class members would

be impracticable. While the exact number and identities of individual members of the class is

---

[46] *See* Fire Subclass, *infra* ¶ 65.

unknown at this time, such information being in the sole possession of Toyota and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that over 1.8 million Class Vehicles containing the Defect have been sold or leased in the United States.

70.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

        a.  Whether Toyota engaged in the conduct alleged herein;

        b.  Whether Toyota omitted or misrepresented material facts to purchasers and lessees of Class Vehicles;

        c.  Whether Toyota's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

        d.  Whether Plaintiff' and Class members' Vehicles were worth less than as represented as a result of the conduct alleged herein;

        e.  Whether Plaintiff and Class members have been damaged and, if so, the extent of such damage; and

        f.  Whether Plaintiff and Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

71.     Toyota engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of all other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison in both quality and quantity to the numerous common questions that dominate this action.

72.     Plaintiff's claims are typical of the claims of the other Class members because, among other reasons, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on

behalf of herself and all other Class members, and no defense available to Defendant is unique to Plaintiff.

73.     Plaintiff is an adequate Class representative because she will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the resources to do so. Neither Plaintiff nor her counsel has any interest adverse or antagonistic to those of the Class.

74.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class members, while significant and important, are relatively small individually compared to the burden and expense that would be required to individually litigate their claims against Toyota. As a result, it would be impracticable for Class members to individually seek redress for Toyota's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **CAUSES OF ACTION**

### **COUNT I**
**Violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.***

75.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

76.     The Illinois Consumer Fraud Act prohibits unfair and deceptive acts or practices in the conduct of trade or commerce. 815 ILCS 505/2.

77.     Plaintiff and other Class members are consumers who purchased or leased a Class Vehicle for end use and not for resale.

78.     In the course of advertising, distributing, and selling Class Vehicles, Toyota misrepresented, falsely promised, concealed, or otherwise omitted material facts about the safety, reliability, quality, and lack of defects in the Class Vehicles. Toyota represented that the Class Vehicles were safe, reliable, and free from major defects.

79.     Toyota intended that Plaintiff and Class members rely on these misleading representations.

80.     The existence of the Defect in Class Vehicles is a material fact to Plaintiff and Class members, as a reasonable consumer would have considered the existence of the Defect to be important when deciding whether, or for what price, to purchase or lease a Class Vehicle. Had Plaintiff and Class members known of the existence of the defect, they would not have purchased a Class Vehicle, or would have paid substantially less for it, due to the danger of stalls, shutdowns, and fires.

81.     Toyota's conduct deceived Plaintiff and Class members into believing that the Vehicles were free from dangerous defects, as any reasonable consumer would consider a manufacturer's representations of a vehicle's safety, quality, and reliability when purchasing a vehicle.

82.     Toyota's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class members suffering actual damage by receiving a car that lacked the characteristics that Toyota represented the Vehicles to have, receiving Vehicles that contained

the Defect, and which were worth less than Plaintiff and Class members paid. Plaintiff and the Fire Subclass were damaged by the destruction of their Vehicles by fires caused by the Defect.

83.     Plaintiff and Class members paid for a car that was supposed have certain characteristics. When they received a vehicle that did not have those characteristics and which fell below the standards set by and described in Toyota's representations, Plaintiff and Class members were damaged because they received a car worth less than what they paid for. Plaintiff and Class members suffered, *inter alia*, diminution in the value of Class Vehicles; out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles; costs associated with arranging and obtaining alternative means of transportation; and other incidental and consequential damages recoverable under the law.

## COUNT II
### Common Law Fraud

84.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

85.     The existence of the Defect is a material fact to Plaintiff and Class members, as a reasonable consumer would have considered the existence of the Defect to be important when deciding whether to, or for how much to pay to, lease or purchase a Class Vehicle.

86.     Toyota made statements assuring, promising, guaranteeing, or otherwise indicating that the Class Vehicles were safe, reliable, and of good quality, and free of major defects. These statements were false or misleading because Class Vehicles contain the Defect, which renders the Class Vehicles unsafe and unreliable.

87.     Toyota intended that Plaintiff and Class members act or rely on those statements by purchasing Toyota vehicles.

88.     Plaintiff and Class members relied on those statements when purchasing or deciding to purchase Class Vehicles, as any reasonable consumer would consider a manufacturer's representations of a vehicle's safety, quality, and reliability when purchasing a vehicle.

89.     Toyota knew or should have known that these statements were false because, *inter alia*, Class members reported the Defect to NHTSA, including stalling and electrical malfunctions attributable to the Defect, as early as 2013, and consistently thereafter up to the present. Further, Toyota was notified of NHTSA's investigation into the Class Vehicles.

90.     Plaintiff and Class members suffered damages as a result of their reasonable reliance on Toyota's statements and omissions. Plaintiff and Class members paid for vehicles that were safe, reliable, and free of major defects. However, they received Class Vehicles with the Defect, which rendered them unsafe and unreliable. Had Plaintiff and Class members known of the existence of the Defect, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for them. Plaintiff and Fire Subclass members were further damaged in that their Vehicles, and personal property within those Vehicles, were damaged or destroyed by fires caused by the Defect.

## COUNT III
## Failure to Warn

91.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

92.     Toyota knew of the existence of the Defect and knew that it causes Class Vehicles to have a dangerous tendency to stall, shut down, or burst into flames.

93.     Toyota knew that the Defect and resulting risk of harm renders Class Vehicles unreasonably dangerous.

94. Toyota knew or should have known that the battery hold down system in Class Vehicles does not adequately secure Vehicles' batteries.

95. Plaintiff and Class members did not know of, and could not reasonably have discovered, the existence of the Defect.

96. The risk of harm presented by the Defect was not obvious to Plaintiff or Class members, and the average consumer would not have been aware of the nature and degree of harm that could occur.

97. Toyota failed to provide adequate instructions or warnings to Plaintiff and Class members regarding, *inter alia*, the existence of the Defect, the potential harms of an inadequately-secured battery, or whether and how to check that a Vehicle's battery is fully secured.

98. Toyota did not adequately warn Plaintiff or Class members that an inadequately-secured battery could lead to electrical shorts, stalls, shutdowns, or fires in Class Vehicles.

99. Toyota did not adequately warn Plaintiff or Class members of the existence of the Defect.

100. Had Toyota provided adequate warnings or instructions to Plaintiff and Class members, Plaintiff and Class members would have learned of the non-obvious harm presented by the Defect, and could have taken appropriate steps to avoid injury.

101. But for Toyota's failure to adequately warn or instruct Plaintiff and Class members, Plaintiff and Class members would not been injured.

102. Plaintiff and Class members paid for vehicles that were safe, reliable, and free of major defects. However, they received Vehicles without adequate warnings regarding the Defect and the harms it causes. Plaintiff and Class Members have incurred, *inter alia*, lost time and out-of-pocket costs to address the Defect and replace their batteries. Plaintiff and Fire Subclass

41

members were further damaged in that their Vehicles, and personal property within those Vehicles, were damaged or destroyed by fires caused by the Defect.

## COUNT IV
### Negligence

103.    Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

104.    Class Vehicles contain the Defect, which renders them unreasonably dangerous due to, *inter alia*, the risk of shutdowns, stalls, and fires.

105.    Toyota knew of the existence of the Defect and the nature of the risks it posed to Plaintiff and Class members.

106.    The Defect, and the increase in risk posed by the use of non-recommended batteries, rendered Class Vehicles unreasonably dangerous. The nature and degree of this risk was not obvious to Plaintiff and Class members, and is not obvious to a reasonable consumer.

107.    Toyota had a duty to warn Plaintiff and Class members of the existence of any non-obvious risk posed by the Defect.

108.    Toyota did not exercise reasonable care and breached the duty it owed to Plaintiff and Class members by, *inter alia*, failing to provide adequate warnings or instructions to Plaintiff or Class members regarding the existence of the Defect and the potential harms caused by an inadequately-secured battery.

109.    But for Toyota's lack of adequate warnings, Plaintiff and Class members would not have been injured.

110.    Plaintiff and Class members paid for vehicles that were safe, reliable, and free of major defects. However, they received Vehicles without adequate warnings regarding the Defect and the harms it causes. Plaintiff and Class Members have incurred, *inter alia*, lost time and out-

of-pocket costs to address the Defect and replace their batteries. Plaintiff and Fire Subclass members were further damaged in that their Vehicles, and personal property within those Vehicles, were damaged or destroyed by fires caused by the Defect.

## COUNT V
### Unjust Enrichment

111.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

112.     This claim is pleaded in the alternative to the other claims herein.

113.     Toyota unjustly benefitted, profited, and was enriched as a direct and proximate result of its omissions and misleading statements regarding, and failure to remedy, the Defect.

114.     Failing to disclose the existence of the Defect and making misleading statements regarding the Class Vehicle's reliability, quality, and safety enabled Toyota to sell a greater number of Class Vehicles, and for a higher price, than it would have if it had revealed the existence of the Defect.

115.     Toyota benefitted by failing to properly and adequately remedy the Defect. Toyota has neither recalled the Class Vehicles nor offered Plaintiff and Class members adequate relief.

116.     By offering a paltry $32 discount to replace smaller sized batteries in Class Vehicles, and making that discount available only at authorized Toyota dealerships, Toyota further enriched itself by coercing Plaintiff and Class members to pay it to correct the Defect.

117.     The acts and omissions described herein also benefitted Toyota by allowing Toyota to reduce or avoid significant negative publicity regarding the existence of the Defect. By doing so, Toyota was able to maintain or artificially inflate the reputation of the Toyota brand and Toyota vehicles, leading to increased sales and leases of Toyota vehicles, including Class Vehicles, and ultimately increased profits for Toyota.

118.    Plaintiff and Class members relied on Toyota's fraudulent omissions and misleading statements when purchasing or leasing their Class Vehicles. Plaintiff and Class members would not have purchased or leased their Class Vehicles, or would have paid far less to purchase or lease the Vehicles, if Toyota had not concealed the existence of the Defect and misled Plaintiff and Class members as to Class Vehicles' reliability and safety.

119.    As a direct and proximate result of Toyota's omissions and misleading statements, Plaintiff and Class members paid an inflated price for Class Vehicles that were not of the quality or in the condition Plaintiff and Class members expected. In addition, Plaintiff and Fire Subclass members were damaged by the complete loss and destruction of their Vehicles and all the personal property therein.

120.    Plaintiff and Class members conferred a monetary benefit on Toyota in the form of the excess or inflated price they paid to purchase or lease defective Class Vehicles. Toyota unfairly charged, and Plaintiff and Class members unknowingly paid, a higher price for the Class Vehicles than they were actually worth.

121.    Toyota has unjustly, inequitably, and unconscionably retained and been enriched by the benefits bestowed on it by Plaintiff and Class members, to the detriment of Plaintiff and the Class.

122.    Toyota has failed to provide an adequate remedy for the Defect to Plaintiff and Class members.

123.    Principles of equity, justice, and good conscience militate against allowing Toyota to retain its ill-gotten gains, and requires disgorgement and restitution of the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, hereby requests that this Court enter and Order against Defendant providing the following:

A. Certification of the Proposed Class, appointment of Plaintiff as representative of the Class, and counsel of record as Class Counsel;

B. Injunctive relief temporarily and permanently enjoining Defendant from continuing to engage in the unlawful conduct alleged herein;

C. Requiring Defendant to repair, recall, or replace the Class Vehicles and to extend applicable warranties to a reasonable period of time, and to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

D. Awarding Plaintiff and Class members all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled (including, without limitation, any payments made to Toyota dealers to address the Defect)'

E. Awarding Plaintiff and Class members restitution and disgorgement;

F. Awarding Plaintiff and Class members pre- and post-judgment interest on all amounts awarded;

G. Awarding Plaintiff and Class members reasonable attorneys' fees, costs, and expenses;

H. Granting such other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 2, 2023

By: /s/ Ben Barnow
Ben Barnow
  *b.barnow@barnowlaw.com*
Anthony L. Parkhill
  *aparkhill@barnowlaw.com*
Riley W. Prince
  *rprince@barnowlaw.com*
Nicholas W. Blue*
  *nblue@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504

Timothy G. Blood (pro hac vice forthcoming)
*tblood@bholaw.com*
Paula R. Brown (pro hac vice forthcoming)
*pbrown@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 W. Broadway, Suite 1490
San Diego, CA 92101
Tel: 619-338-1100
Fax: 619-338-1101

*Counsel for Plaintiff*

*application for admission forthcoming

46